Barney R. COLSON et al., Plaintiffs,

v.

Stewart L. UDALL, Secretary of the Interior, Defendant.

Civ. No. 63–26.

United States District Court
M. D. Florida,
Ocala Division.

Jan. 4, 1968.

Richard Hildreth, Fletcher, Heald, Rowell, Kenehan & Hildreth, and James E. Rodgers, Cross, Murphy & Smith, Washington, D. C., and Joe C. Jenkins, Jr., Gainesville, Fla., for plaintiffs.

Edward F. Boardman, U. S. Atty., Jacksonville, Fla., and Herbert Pittle, U. S. Dept. of Justice, Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SCOTT, District Judge.

### Findings of Fact

1. Plaintiff is a citizen of the United States and a citizen and resident of the State of Florida.

2. Defendant is the Secretary of the Interior.

3. By Article Nine of the Treaty of Prairie du Chien, concluded with the Sioux Indians on July 15, 1830, 7 Stat. 328, that Tribe ceded to the United States certain land in the Territory of Michigan. Subsequently, it was determined to extinguish the Sioux Half Breed Reservation which had been established for those Indians and, by the Act of July 17, 1854, 10 Stat. 304, the President was authorized by Congress to issue certificates to those individuals who would relinquish the use of those lands authorized by Article Nine of the Treaty of Prairie du Chien.

4. The Act of July 17, 1854, provided that certificates of scrip issued permitted those Indians to locate the scrip upon specified types of land, including "unoccupied lands subject to preemption or private sale" and the Act expressly stated that "no transfer or conveyance of any of said certificates or scrip shall be valid."

5. Under the authority of the Act of July 17, 1854, Certificate No. 379–C was issued to one Ellen Angie for 80 acres of land and Certificate No. 398–D was issued to Anthony Renville for 160 acres.

6. The plaintiff, on August 17, 1958, filed an application to locate those two certificates on a number of scattered tracts of land owned by the United States in Florida. The lands applied for comprise a total of 239.99 acres.

7. With his application the plaintiff submitted the Ellen Angie scrip and a power of attorney executed December 26, 1914,* whereby one Jesse R. Linn authorized plaintiff to do and perform all of the acts which Linn had previously been authorized to do by Ellen Angie. The power of attorney, among other things, recites that these authorized acts were

* * * to enter upon and take possession of any and all lands which she then owned or to or in which she was entitled or interested, and to enter upon and take possession of any and all lands which she should thereafter acquire or become seized of, or in which she should thereafter become interested by virtue of the location of the "Sioux Half Breed Lake Pepin Reserve Scrip" * * * and also, in like manner, authorizing and empowering the said attorney in fact to grant, bargain, sell and convey by good and sufficient deed of conveyance, with or without covenants of warranty, any and all lands already located with said scrip and any and all lands that may be thereafter located with said scrip, or any part or parts thereof; and any and all lands which she should thereafter acquire or become seized of and which she should thereafter become interested in by virtue of the location of said scrip. * * *

8. There was also submitted with the Ellen Angie scrip a document entitled "Quit Claim Deed", wherein Ellen Angie, then Williams, purported

* * * to remise, release, sell, convey and QUIT CLAIM unto the said * * * [Barney R. Colson], his heirs and assigns forever, all the right, title, interest, claim and demand which the said * * * [Ellen Angie Williams] has in and to the following described land, the title to which has, or may hereafter, be acquired by location of the Sioux Half Breed Scrip. * * *

The space in the deed for the description of the land was left blank.

9. With the Anthony Renville scrip plaintiff submitted a copy of a court decree in which Renville and others were

* * * ordered to execute duplicate powers of attorney to some suitable person to locate the same [the scrip], to receive patents therefor and convey the same when located and patented, the same as such defendants [in that case] could do in person * * *.

10. With that application plaintiff also submitted a power of attorney executed June 10, 1914, by Anna R. Kean for Anthony Renville "or the heirs and legal representatives of Anthony Renville", appointing plaintiff

* * * our true and lawful attorney, for us, or each of us individually, and in our name, place and stead, to enter upon, and take possession of any and all pieces and parcels of land or the timber or other materials thereon in the State of      , which we become seized of, or in which we may now or hereafter be in any way interested; under and by virtue of location of Sioux Half Breed Scrip * * * and * * * to grant, bargain, sell, demise, lease, convey and confirm said land, or any part thereof * * *.

11. In a decision rendered February 26, 1959, the Chief, Lands Adjudication Section, Eastern States Land Office, decided that eight tracts, embracing a total of 144.42 acres, were subject to location, but the application was rejected as to the remainder of the tracts on the ground that those lands had been withdrawn from the public lands of the United States.

12. The plaintiff appealed from that portion of the decision which rejected his application to locate the scrip on the other 39.91 acres. He acquiesced in the remainder of the decision and filed a new application to locate scrip on 57.83 acres

* Apparently the powers of attorney for both the Ellen Angie and Anthony Renville scrip were originally obtained by Linn in 1910 or 1914 but were in blank and when plaintiff acquired substitute powers in 1925, the blanks were filled in with plaintiff's name.

which form the northern portion of the Punta Blanca Island, Florida.

13. By decision of July 27, 1960 (BLM 047548), the Bureau of Land Management rejected plaintiff's application to locate any of the scrip. The Bureau thus reversed the decision of the Eastern States Land Office, which had determined that plaintiff was entitled to locate the scrip on 144.42 acres, but affirmed the decision denying plaintiff's rights to locate the scrip on other lands. Plaintiff's application to locate the 57.83 acres as a matter of administrative convenience was considered initially by the Director of the Bureau of Land Management in connection with the plaintiff's appeal.

14. The plaintiff then appealed, in accordance with the rules and regulations of the Department of the Interior, to the Secretary of that Department. By decision dated September 16, 1963 (A–28617), reported at 70 I.D. 409, the Secretary affirmed the decision of the Director of the Bureau of Land Management and held that plaintiff was not entitled to select and locate any lands whatever under the powers of attorney which he held in connection with the scrip certificates relied upon.

15. The Secretary's decision stating the reasons for rejection states, among other things, that after review of the records submitted by plaintiff, copies of which are attached as exhibits to plaintiff's complaint, none contains anything which may be considered to vest power in the plaintiff *to locate in the name of* either of the scripees under the scrip certificates.

16. In addition to the documents mentioned above, there was filed with plaintiff's application certain "Guarantees" executed in favor of the plaintiff by the W. E. Moses Land Scrip and Realty Company, which purportedly guaranteed the validity of the certificates sold to the plaintiff. That document shows that the Ellen Angie scrip was sold for $6,000 and the Anthony Renville scrip was sold for $13,600.

17. The power of attorney by substitution which plaintiff holds from Linn with relation to the Ellen Angie scrip on its face shows nothing more than that Ellen Angie, by power of attorney dated February 21, 1910, authorized Linn to enter upon and take possession of any and all lands in which she might be interested by virtue of the location of her scrip, and further authorized Linn to sell and convey any lands already located with said scrip and any and all lands which she would thereafter acquire *by virtue of the location* of said scrip.

18. The "Guarantees" which plaintiff obtained with respect to the Anthony Renville scrip are meaningless insofar as showing any authority in plaintiff to locate land in the name of the scripee. The document dated June 10, 1914, signed by Anna R. Kean, which recites that Anthony Renville, or his heirs and legal representatives, by Anna R. Kean, a commissioner of court, have made and appointed plaintiff as the lawful attorney for Anna R. Kean to enter upon and take possession of any land which Kean owns or may thereafter acquire by virtue of location of the scrip certificate No. 398–D, does not contain any authority *to locate land in the name of* the scripee.

19. Plaintiff never acquired rights either from the original scripee or by substitution to select and locate lands under the scrip certificates in the name of the scripees.

*Conclusions of Law*

1. The powers of attorney under which plaintiff claims by substitution do not confer upon plaintiff the right to select and locate public lands of the United States under the scrip certificates in the names of the persons to whom the certificates originally were issued.

2. Since the scrip certificates were issued under authority of the Act of Congress of July 17, 1854, 10 Stat. 304, only to persons who were then alive, it must be presumed, in the absence of

**830**

any evidence to the contrary, that all of the original scripees are now deceased.

3. Even if plaintiff acquired valid rights to select and locate lands in the name of the scripee by the substitute powers of attorney, the death of the scripees operates to revoke the powers, unless the powers were coupled with an interest.

4. If the powers of attorney which the plaintiff holds by substitution were coupled with an interest, then the transfer would constitute a violation of the prohibition in the Act of July 17, 1854, which provided that "no transfer or conveyance of any of said certificates or scrip shall be valid."

5. The Secretary of the Interior, who is the officer charged with the administration of public lands, has made no determination as to whether any of the lands for which plaintiff has applied is available for selection.

6. It is premature for the court to determine whether any of the land described in the plaintiff's complaint is now available for selection.

7. The "Guarantees" which plaintiff obtained with the substitute powers of attorney do not authorize plaintiff to locate land in the name of the scripee.

8. This action is a suit against the United States, which is not a party and has not waived its sovereign immunity.

9. Plaintiff is barred from maintaining the action by the doctrine of *laches*.

10. The decision by the Solicitor of the Department of the Interior on behalf of the Secretary (A–28617) is supported by substantial evidence, consisting of the record, which contains plaintiff's application and amended applications, and other exhibits, copies of which are attached to the complaint, and therefore is conclusive as a matter of law.

11. Under the facts and the law the plaintiff has shown no right to relief and final judgment will be entered accordingly in favor of the defendant.