**PRESTON NUTTER CORPORATION, Plaintiff-Appellant,**

v.

**Rogers C. B. MORTON, Secretary of the Interior, United States of America, Defendant-Appellee.**

No. 72–1403.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 15, 1972.

Decided June 5, 1973.

H. Byron Mock, Salt Lake City, Utah (Kent Shearer and Robert L. Schmid, Salt Lake City, Utah, with him on the brief), for plaintiff-appellant.

Herbert Pittle, Washington, D. C. (Kent Frizzell, Asst. Atty. Gen., C. Nelson Day, U. S. Atty., and H. Ralph Klemm, Asst. U. S. Atty., Salt Lake City, Utah, and Jacques B. Gelin, and Larry G. Gutterridge, Dept. of Justice, Washington, D. C., on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

LEWIS, Chief Judge.

Preston Nutter Corporation (PNC) appeals from a summary judgment granted by the District Court for the

District of Utah in favor of appellee, Secretary of the Interior, sustaining the Secretary's decision that appellant is not the successor in interest to a certain Sioux Half-Breed scrip. For reasons hereinafter discussed the judgment is affirmed.

*Treaty History*

In 1830 the United States Government and the Sioux Indian Nation signed the Treaty of Prairie du Chien, 7 Stat. 328, which among other guarantees set aside a reservation for half-breed Sioux in the Minnesota Territory. By the Act of July 17, 1854, 10 Stat. 304, Congress authorized the President to issue certificates or scrip to eligible half-breed Sioux Indians in return for a relinquishment of rights to land granted them by the Treaty of Prairie du Chien. The statute provided that the scrip would authorize individual Indians to relocate and patent land equal in amount to land relinquished in Minnesota.

The pertinent sections of the 1854 Act read:

> Provided, [t]hat said certificates or scrip shall not embrace more than six hundred and forty, nor less than forty acres each, and provided that the same shall be equally apportioned, as nearly as practicable, among those entitled to an interest in said reservation: *And provided further, that no transfer or conveyance of any of said certificates or scrip shall be valid.* (Emphasis added.)

*Josette Montre Scrip*

Pursuant to the 1854 Act one Josette Montre, a half-breed Sioux, was issued certificate 567–E for 160 acres of land which would enable her, upon surrender of the scrip to the Department of the Interior, to relocate on 160 acres of available public lands.

Through a transfer device Anna R. Kean obtained authorization from Josette Montre to locate land under certificate 567–E in the name of Josette

Montre. Kean also obtained an irrevocable power of attorney to convey such land once located.

Around the year 1900 Kean located certain land in the state of Indiana for Josette Montre and then transferred said lands to herself. However, in the case of Kean v. Calumet Canal & Improvement Co., 190 U.S. 452, 23 S.Ct. 651, 47 L.Ed. 1134 (1903), the Supreme Court held that the property located by Kean had actually been conveyed to Indiana in 1855 and was, therefore, not public land for which Sioux Half-Breed scrip rights could be exercised.

Anna R. Kean then brought suit against Josette Montre and others in the Circuit Court of Lake County, Indiana to determine her rights under the scrip.[1] The court determined that the contract between Kean and Montre had been left unfulfilled requiring that the scrip be returned to Kean so that she could make a new selection of land. The court then appointed Kean as a special commissioner of the court empowering her to apply for the certificate and upon receipt to execute in the name of Josette Montre duplicate powers of attorney to locate and convey land.

The Department of the Interior in an opinion issued April 29, 1914, D–29200, agreed with the ruling of the Indiana court stating:

> In view of the holding of the Court, it would appear that where a person has purchased and located and patented under this class of scrip and the title has failed because the Government had already disposed of the land such purchaser shall be permitted to govern the use of the scrip for purposes of making a new location. Of course, the new selection would have to be in the name of the scripee as was the former one.

Accordingly, the Secretary issued a duplicate Sioux Half-Breed Certificate No. 567–E in the name of Josette Montre but delivered said certificate to Anna R.

---

1. Josette Montre's Sioux Half-Breed scrip was only one of nine over which Anna R. Kean held power of attorney and for which she had located land in Indiana. The Indiana suit involved her right to all nine certificates.

Kean. Kean then executed in the name of Josette Montre an irrevocable power of attorney coupled with an interest to enter and convey lands patented to Josette Montre under Sioux Half-Breed scrip 567–E. An application to locate such lands was also signed and executed by Kean on behalf of Josette Montre. These two documents subsequently were delivered in blank to Preston Nutter. After Nutter's death in 1939 his interest in the scrip passed to his heirs and was assigned to appellant Preston Nutter Corporation in 1957.

## The Acts of 1955 and 1964

Congress expressed its concern regarding the large number of outstanding scrip against public lands by passing the Act of August 5, 1955, 69 Stat. 534. This Act required that all undischarged scrip be recorded with the Department of the Interior within a specified time period or future rights to the acquisition of public lands would be forfeited. Preston Nutter Corporation duly submitted Sioux Half-Breed Certificate No. 567–E for recordation along with various other documents including the power of attorney covering the beneficial interest in lands which might be located.

Continued concern for indefinite charges against public lands prompted Congress to pass the Act of August 31, 1964, 78 Stat. 751, which required that holders of outstanding scrip rights registered under the 1955 Act must exercise those rights before January 1, 1970 or the scrip would become null and void. The Act provided that scrip holders could exercise their rights to locate public lands until January 1, 1968 or in the alternative elect to receive cash for scrip rights until January 1, 1970. The cash value would be based upon the average fair market value of public lands actually conveyed in exchange for scrip since August 5, 1955. Preston Nutter Corporation elected to receive cash in lieu of land and filed its claim worth $210,000 with the Department of the Interior on August 22, 1969.

## The Litigation

The Secretary of the Interior by letter decision on April 29, 1970 rejected the claim submitted by Preston Nutter Corporation pursuant to Half-Breed Certificate No. 567–E. The Secretary's decision stated in part:

> Therefore, since the Preston Nutter Corporation is not such a person who may succeed to the personal right of the original scrip holder your application for redemption of the certificate is rejected. This constitutes the final administrative determination of the Department. (43 CFR 1844.)

Preston Nutter Corporation then filed suit in the United States District Court against the Secretary of the Interior invoking the Administrative Procedure Act, 5 U.S.C. §§ 702–703, the Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C. § 1361 seeking a writ of mandamus to compel the Secretary to recognize its claim. The district court sustained the ruling of the Secretary of the Interior determining that the decision was supported by substantial evidence in the administrative record. Summary judgment for the Secretary was granted March 29, 1972.

On appeal, the issue presented is: Whether the district court correctly sustained the administrative ruling of the Secretary of the Interior that Preston Nutter Corporation did not have a valid claim for cash or public lands in satisfaction of Sioux Half-Breed Certificate No. 567–E held by Preston Nutter Corporation as a successor in interest.

## The Appeal

The Act of July 17, 1854, 10 Stat. 304, specifically provides that no transfer or conveyance of Sioux Half-Breed scrip would be valid. Such a proscription was an effort by Congress to protect the Indians' land rights from dishonest speculators. Cong.Globe, 33rd Cong., 1st Sess. 1114 (1854). In an attempt to nullify the provisions of the 1854 Act a transfer device was created involving a power of attorney to select and locate lands in the name of the scripee and a

second blank power of attorney authorizing the unnamed attorney to sell or convey any lands so located. The party holding the power of attorney to locate would file the scrip and the location of lands chosen with the General Land Office and receive a patent therefor in the name of the scripee. Then, the second instrument allowing an unnamed attorney to sell or convey such lands held by scripee would either be assigned or executed. Thus the statutory requirement that Sioux Half-Breed scrip could not be conveyed or transferred was effectively circumvented.

The General Land Office, realizing the actual effect of these transactions, refused to recognize their validity asserting they were an illegal conveyance of scrip. Allen v. Merrill, 8 I.D. 207 (1889); Strong v. Pettijohn, 21 I.D. 111 (1895). On appeal the Supreme Court in a series of opinions sustained such transactions within limited bounds. Myrick v. Thompson, 99 U.S. 291, 25 L. Ed. 324 (1878); Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719 (1892); Midway Company v. Eaton, 183 U.S. 602, 22 S.Ct. 261, 46 L.Ed. 347 (1902). In each of the Supreme Court cases there were two instruments involved: a power of attorney to locate lands and a power to sell once located. The Supreme Court, in essence, held that the power of attorney to locate lands in the name of the scripee did not make the transaction a transfer of scrip within the prohibition of the 1854 Act. And, once the lands became vested in the scripee the blank power of attorney to sell or convey such lands was valid, even if executed before the land was located. The *Eaton* court, in approving prior case holdings, stated that "the transactions were intended as a conveyance of the land, and represented that intention, and could not be shown to be a transfer of the scrip." Midway Co. v. Eaton, *supra* at 616, 22 S.Ct. at 267. But, in those cases approving such transactions there was a valid location of land in the scripee before the statutory requirements could be successfully contravened.

■ In the present case there was no such location of land in the name of the scripee nor does appellant Preston Nutter Corporation possess a valid power of attorney to locate and patent lands.[2] Notwithstanding, Preston Nutter Corporation argues that the irrevocable power of attorney to convey lands located under the scrip entitled it to a cash settlement because all requirements of the 1964 Act were met. Appellant further contends that requiring it to follow in full the procedures developed to evade the requirements of the 1854 Act serves no necessary purpose.

In Felix v. Patrick, *supra*, 145 U.S. at 326, 12 S.Ct. at 865, the Court noted that "[t]he device of a blank power of attorney and quitclaim deed was doubtless resorted to for the purpose of evading the provision of the act of Congress," and "the scheme [was] a palpable device to evade the law against the assignment of the scrip." Even recognizing the underlying purpose of the blank powers of attorney, the Supreme Court approved the transactions. But, the language of the cases evidenced a clear intention by the Court to only allow this procedure if formalities were strictly observed. The right of free alienation of property was balanced against the protective intentions of Congress resulting in the Court recognizing a limited exception to the 1854 statutory prohibition. No tendency to extend that exception was manifested.

In the recent case of Barney R. Colson, 70 I.D. 409, the rationale of the earlier Supreme Court decisions was examined when almost the identical question to that in this case was presented. In *Colson* an attempt was made to locate public lands under rights granted in Sioux Half-Breed scrip. Colson pos-

2. Under the 1955 Recordation Act, PNC registered the scrip in question and an irrevocable power of attorney to convey lands signed by Anna R. Kean on behalf of Josette Montre. The record shows that PNC also possesses an *application* to locate lands executed by Anna R. Kean on behalf of Josette Montre but such was not registered under the 1955 Act.

sessed documents signed by Anna R. Kean and Jesse L. Linn on behalf of half-breed Sioux granting an irrevocable power of attorney to enter on and convey lands located under the scrip. Colson had no power of attorney to locate and patent lands for the Indians.[3] The Secretary of the Interior ruled that the documents possessed by Colson did not confer on him the right to locate lands under the scrip issued to scripees thus preventing him from entering on or conveying such lands. Barney R. Colson, *supra* at 421–422. Those rights that Colson had obtained were nullified by failure to observe the formalities of the transfer device. The Secretary's decision was affirmed in Colson v. Udall, D. C.Fla., 278 F.Supp. 826, aff'd sub nom., Colson v. Hickel, 5 Cir., 428 F.2d 1046, cert. den., 401 U.S. 911, 91 S.Ct. 875, 27 L.Ed.2d 810. We find that Colson reasoning persuasive as it applies to this case.

Furthermore, any attempt by Preston Nutter Corporation to contend that the irrevocable power of attorney which it now possesses gives it the right to locate and patent lands for Josette Montre is self-defeating. If it does have the power and it is irrevocable, then it is coupled with an interest and would be an actual transfer or conveyance of scrip as specifically prohibited by the 1854 Act. *See* Frederick S. Schultz, 52 I.D. 601, 607; Anna R. Kean, 39 I.D. 554, 556; Felix v. Patrick, *supra* 145 U.S. at 326–327, 12 S.Ct. 862; Colson v. Udall, *supra* 278 F.Supp. at 830.

■ Finally, Preston Nutter Corporation asserts that the 1964 Act requiring all holders of Sioux Half-Breed scrip to extinguish their rights by selecting public land or receiving cash altered any existing necessity to possess a power of attorney to locate lands. The purpose of the 1964 Act reveals a contrary intention. Congress and the Department of the Interior were concerned about the disruptive effect on governmental management caused by long-standing claims against public lands. When the Interior and Insular Affairs Committee of the Senate reported the proposed act out of committee they stated:

> The holders of the recorded scrip and similar rights are entitled to the land that the United States pledged to their predecessors in interest. . . .

> Enactment of H.R. 4149 will provide procedures to assure that scrip holders will have a reasonable selection of public lands from which to choose in satisfying the rights they hold. The bill also provides that if these rights are not exercised by January 1, 1970 . . . a cash settlement will be effected. (S.Rep. 1455, 88th Cong., 2 Sess., 1964 U.S.Code Cong. & Admin. News, pp. 3330, 3331.)

The legislative history and the 1964 Act itself clearly indicates that there was no attempt to change the purpose or procedures of the 1854 Act. Rather, Congress finally desired to rid itself of these 100-year-old claims against public lands. To do that they offered land or cash in lieu of land with a termination date. To construe the 1964 Act as requiring that appellant no longer needs to show a power of attorney to locate lands under Sioux Half-Breed scrip, if he chooses the cash option, is to run afoul of Congressional intent. Only where Preston Nutter Corporation can show a right to receive public lands would the option to a cash settlement come into play. Therefore, failure to produce a valid power of attorney to locate and patent lands on behalf of Josette Montre becomes fatal to appellant's claim.

The judgment of the district court is affirmed.

---

3. The documents held by Colson were very similar to those described in this case.